**HALPER SADEH LLP**
Zachary Halper, Esq.
186 Darwin Lane
North Brunswick, NJ 08902
Tel: (212) 763-0060
Fax: (646) 776-2600
Email: zhalper@halpersadeh.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JAMES PETERSON, | Case No: |
| Plaintiff, | **COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS** |
| v. | **JURY TRIAL DEMANDED** |
| IMMUNOMEDICS, INC., BEHZAD AGHAZADEH, BARBARA DUNCAN, ROBERT AZELBY, PETER BARTON HUTT, CHARLES BAUM, KHALID ISLAM, and SCOTT CANUTE, | |
| Defendants. | |

Plaintiff James Peterson ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

## NATURE OF THE ACTION

1.     This is an action against Immunomedics, Inc. ("Immunomedics" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(e), 14(d)(4), and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(e), 78n(d)(4), and 78t(a), and Rule 14d-9 promulgated

thereunder by the SEC, 17 C.F.R. § 240.14d-9, in connection with the proposed acquisition (the "Proposed Transaction") of Immunomedics by Maui Merger Sub, Inc. ("Merger Sub"), a wholly owned subsidiary of Gilead Sciences, Inc. ("Gilead").

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 14(e), 14(d)(4), and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(e), 78n(d)(4), and 78t(a)) and Rule 14d-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14d-9).

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the Company is headquartered in this District.

5.      In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.      Plaintiff is, and has been at all relevant times hereto, an owner of Immunomedics common stock.

7.      Defendant Immunomedics is a clinical-stage biopharmaceutical company. The Company is incorporated in Delaware with principal executive offices located in Morris Plains, New Jersey. The Company's common stock trades on the Nasdaq Global Select Market under the ticker symbol, "IMMU."

8.      Defendant Behzad Aghazadeh ("Aghazadeh") is Executive Chairman of the Board of the Company.

9.      Defendant Barbara Duncan ("Duncan") is a director of the Company.

10.     Defendant Robert Azelby ("Azelby") is a director of the Company.

11.     Defendant Peter Barton Hutt ("Hutt") is a director of the Company.

12.     Defendant Charles Baum ("Baum") is a director of the Company.

13.     Defendant Khalid Islam ("Islam") is a director of the Company.

14.     Defendant Scott Canute ("Canute") is a director of the Company.

15.     Defendants Aghazadeh, Duncan, Azelby, Hutt, Baum, Islam, and Canute are collectively referred to herein as the "Individual Defendants."

16.     Defendants Immunomedics and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**A.  Background of the Company and the Proposed Transaction**

17.     Immunomedics is a clinical-stage biopharmaceutical company developing monoclonal antibody-based products for the targeted treatment of cancer. Immunomedics's technologies create humanized antibodies that can be used either alone in unlabeled or "naked" form, or conjugated with chemotherapeutics, cytokines or toxins. Its most advanced product candidate is sacituzumab govitecan ("IMMU-132"), an antibody-drug conjugate ("ADC") that has received Breakthrough Therapy Designation ("BTD") from the United States Food and Drug Administration ("FDA") for the treatment of patients with metastatic triple-negative breast cancer ("mTNBC") who previously received at least two prior therapies for metastatic disease.

18.     On April 22, 2020, the FDA granted accelerated approval to Immunomedics's

product, Trodelvy™ (sacituzumab govitecan-hziy), for the treatment of adult patients with metastatic triple-negative breast cancer ("mTNBC").

19.    On May 6, 2020, Immunomedics issued a press release announcing its financial results for the first quarter of 2020. Defendant Aghazadeh touted the Company's products and future growth and prospects, stating, in pertinent part:

> "We entered 2020 with strong momentum across our operations," stated Dr. Behzad Aghazadeh, Executive Chairman of Immunomedics. "Following a successful biologics license application resubmission in late 2019, we were pleased to receive accelerated approval for Trodelvy in late April and accomplished our goal of bringing this therapy to patients with metastatic triple-negative breast cancer (mTNBC). Trodelvy was launched within days of receiving FDA approval and transformed Immunomedics into a fully-integrated biopharmaceutical company in the process. We also announced the early stoppage of our confirmatory Phase 3 ASCENT study due to compelling evidence of efficacy and look forward to reporting topline study results in mid-2020. These data are expected to establish Trodelvy as a new standard of care in mTNBC and help improve the lives of people with hard-to-treat cancers worldwide. Finally, we significantly strengthened our balance sheet with an over-subscribed follow-on offering that will allow us to build on our momentum during the growth period ahead."

20.    On August 5, 2020, Immunomedics issued a press release announcing its financial results for the second quarter of 2020. Defendant Aghazadeh again touted the Company's products and future growth and prospects, stating, in pertinent part:

> "This has been an exciting quarter for Immunomedics. Not only are we energized by the encouraging early adoption of Trodelvy by patients and physicians, which we attributed to the drug's compelling risk/benefit profile, but we are also inspired by the remarkable topline results Trodelvy has produced in the ASCENT study," stated Dr. Behzad Aghazadeh, Executive Chairman of Immunomedics. "With full data readouts in the coming months from ASCENT and the pivotal TROPHY U-01 study in metastatic urothelial cancer (mUC), either one of which could potentially support expansion of Trodelvy's label, we look forward to updating you in the next quarters. Meanwhile, we continue to admire the dedication of healthcare workers around the globe in helping navigate these unprecedented times. They are our role models as we strive to develop new clinically meaningful treatment options for the benefit of patients with hard-to-treat cancers."

21.    Despite this promising outlook and growth, on September 13, 2020,

Immunomedics and Gilead announced that they had entered into a definitive agreement pursuant to which Gilead would acquire Immunomedics for $88.00 per share in cash. The press release states, in pertinent part:

### Gilead Sciences to Acquire Immunomedics

*-- Gilead Adds Trodelvy[TM], First-in-Class Antibody-Drug Conjugate Approved to Treat Triple-Negative Breast Cancer, With Promise in Other Forms of Breast Cancer and Additional Solid Tumors –*

*-- Acquisition Transforms Gilead's Portfolio with First-in-Class Commercial Product with Significant Revenue and Best-in-Class Potential –*

*-- Trodelvy will Accelerate Gilead's Emerging and Complementary Oncology Pipeline, Building on Agreements Executed Earlier This Year –*

*-- Immunomedics to Present Latest Clinical Findings on Trodelvy at European Society for Medical Oncology Virtual Congress 2020 This Coming Week --*

September 13, 2020 03:00 PM Eastern Daylight Time

FOSTER CITY, Calif. & MORRIS PLAINS, N.J.--(BUSINESS WIRE)--Gilead Sciences, Inc. (Nasdaq: GILD) and Immunomedics (Nasdaq: IMMU) announced today that the companies have entered into a definitive agreement pursuant to which Gilead will acquire Immunomedics for $88.00 per share in cash. The transaction, which values Immunomedics at approximately $21 billion, was unanimously approved by both the Gilead and Immunomedics Boards of Directors and is anticipated to close during the fourth quarter of 2020.

The agreement will provide Gilead with Trodelvy[TM] (sacituzumab govitecan-hziy), a first-in-class Trop-2 directed antibody-drug conjugate (ADC) that was granted accelerated approval by the U.S. Food and Drug Administration (FDA) in April for the treatment of adult patients with metastatic triple-negative breast cancer (mTNBC) who have received at least two prior therapies for metastatic disease. Immunomedics plans to submit a supplemental Biologics License Application (BLA) to support full approval of Trodelvy in the United States in the fourth quarter of 2020. Immunomedics is also on track to file for regulatory approval in Europe in the first half of 2021.

In the Phase 3 ASCENT study, which was halted early due to efficacy based on the unanimous recommendation of the independent Data Safety Monitoring Committee, Trodelvy significantly improved progression-free survival (PFS) and overall survival (OS) in previously treated patients with advanced mTNBC.

Detailed results from this study are expected to be presented at the upcoming European Society for Medical Oncology (ESMO) Virtual Congress 2020.

Beyond mTNBC, Trodelvy is also being studied in an ongoing Phase 3 trial in third line HR+/HER2- breast cancer and a registrational Phase 2 study in bladder cancer. Additional ongoing studies are evaluating the potential of Trodelvy as a treatment for non-small cell lung cancer and other solid tumor types. Trodelvy is being studied as both a monotherapy and in combination with checkpoint inhibitors and other non-immuno-oncology products by Immunomedics and independent investigators. Additional clinical data for Trodelvy in bladder cancer and other solid tumors will also be presented at ESMO this coming week.

"This acquisition represents significant progress in Gilead's work to build a strong and diverse oncology portfolio. Trodelvy is an approved, transformational medicine for a form of cancer that is particularly challenging to treat. We will now continue to explore its potential to treat many other types of cancer, both as a monotherapy and in combination with other treatments," said Daniel O'Day, Chairman and Chief Executive Officer, Gilead Sciences. "We look forward to welcoming the talented Immunomedics team to Gilead so we can continue to advance this important new medicine for the benefit of patients with cancer worldwide."

"We are very pleased that Gilead recognized the value of Trodelvy – both for the important role it has already begun to play for patients with metastatic triple-negative breast cancer and for its potential to help many other patients with cancer in the future," said Behzad Aghazadeh, PhD, Executive Chairman of Immunomedics. "We are excited for the opportunities ahead of us as we join with Gilead to advance our shared mission in defeating cancer. By working with Gilead, we have the opportunity to accelerate our progress and improve care for patients in need of new therapies."

**Compelling Strategic Benefits**

- **Rapidly Expanding Trodelvy's Benefit for Patients Globally:** After closing Gilead intends to initiate numerous additional mid- and late-stage studies in the near term to determine which patients will benefit from Trodelvy as both a monotherapy or in combination with other products. Gilead brings commercial, medical, regulatory and manufacturing expertise, which will help rapidly advance Trodelvy through development and reach additional patients. Gilead will also bring to Immunomedics an established infrastructure and operations in Europe and Japan to support the launch of Trodelvy in those regions, pending approval. After closing, Gilead will retain global rights to Trodelvy outside of greater China, South Korea and certain Southeast Asian countries.

- **Trodelvy is Foundational to Gilead's Oncology Franchise:** Trodelvy will bring to Gilead a cornerstone product that broadens and deepens the company's solid tumor pipeline, building on current marketed products and late-stage clinical

candidates for patients with hematological malignancies at Kite and Gilead, including Yescarta®, Tecartus® and magrolimab.

- Trodelvy is approved as a third-line treatment for mTNBC and has shown promise for earlier stages of the disease. TNBC represents approximately 15 to 20 percent of all breast cancer cases and is generally considered the most aggressive form of breast cancer. HR+/HER2- breast cancer accounts for more than 70 percent of all breast cancers.

- **Accelerates Gilead's Revenue and EPS Growth:** Trodelvy was launched in May of 2020 and has significant commercial potential in mTNBC and other solid tumors. In addition to immediately accelerating Gilead's revenue growth, the acquisition of Immunomedics is expected to be neutral to accretive to Gilead's non-GAAP EPS in 2023 and significantly accretive thereafter.

### Transaction Terms and Financing

Under the terms of the merger agreement, a wholly-owned subsidiary of Gilead will promptly commence a tender offer to acquire all of the outstanding shares of Immunomedics' common stock. The $88.00 per share acquisition price represents a 108 percent premium to Immunomedics' closing price on September 11, 2020. Following successful completion of the tender offer, Gilead will acquire all remaining shares not tendered in the offer through a second step merger at the same price as the tender offer.

The consummation of the tender offer is subject to various conditions, including a minimum tender of at least a majority of outstanding Immunomedics shares, the expiration or termination of the waiting period under the Hart-Scott-Rodino Antitrust Improvements Act and other customary conditions.

The tender offer is not subject to a financing condition and will be funded through approximately $15 billion in cash on hand, as well as approximately $6 billion in newly issued debt. Gilead expects to retain an investment grade credit rating following this transaction and this agreement does not alter Gilead's stated capital allocation strategy or its commitment to maintain and grow its dividend over time. Lazard and Morgan Stanley & Co. LLC are acting as financial advisors to Gilead. Centerview Partners LLC and BofA Securities are acting as financial advisors to Immunomedics. Cowen & Company, LLC also provided advice to Immunomedics. Davis Polk & Wardwell LLP is serving as legal counsel to Gilead and Watchell, Lipton, Rosen & Katz is serving as legal counsel to Immunomedics.

### Conference Call

At 5:00 p.m. Eastern Time today, Gilead's management will host a conference call and a simultaneous webcast to discuss the transaction. A live webcast of the call can be accessed at Gilead's Investors page at http://investors.gilead.com. Please

connect to the website at least 15 minutes prior to the start of the call to allow adequate time for any software download that may be required. Alternatively, please call 877-359-9508 (U.S.) or 224-357-2393 (international) and dial the conference ID 5776009 to access the call.

Telephone replay will be available approximately two hours after the call through 8:00 p.m. Eastern Time, September 15, 2020. To access the replay, please call 855-859-2056 (U.S.) or 404-537-3406 (international) and dial the conference ID 5776009. The webcast will be archived on www.gilead.com for one year.

## About Trodelvy

Trodelvy (sacituzumab govitecan-hziy) is a Trop-2 directed antibody-drug conjugate indicated for the treatment of adult patients with metastatic triple-negative breast cancer (mTNBC) who have received at least two prior therapies for metastatic disease. This indication is approved under accelerated approval based on tumor response rate and duration of response. Continued approval for this indication may be contingent upon verification and description of clinical benefit in confirmatory trials. To learn more about TRODELVY™ (sacituzumab govitecan-hziy), please visit https://www.trodelvy.com.

Trodelvy carries a black box warning for severe neutropenia and severe diarrhea. The most common adverse reactions occurring in 25 or more percent of patients included nausea, neutropenia, diarrhea, fatigue, anemia, vomiting, alopecia, constipation, decreased appetite, rash and abdominal pain. The most common Grade 3 or 4 adverse events occurring in more than 5 percent of patients were neutropenia, white blood cell count decreased, anemia, hypophosphatemia, diarrhea, fatigue, nausea and vomiting. Two percent of patients discontinued treatment due to adverse events. There were no deaths related to treatment and no severe cases of neuropathy or interstitial lung disease. See trodelvy.com for additional U.S. important safety information and full Prescribing Information, including Boxed Warning.

## About Immunomedics

Immunomedics is a leader in next-generation antibody-drug conjugate (ADC) technology, committed to help transform the lives of people with hard-to-treat cancers. The company's proprietary ADC platform centers on using a novel linker that does not require an enzyme to release the payload to deliver an active drug inside the tumor cell and the tumor microenvironment, thereby producing a bystander effect. Trodelvy, the company's lead ADC, is the first ADC the FDA has approved for the treatment of people with metastatic triple-negative breast cancer and is also the first FDA-approved anti-Trop-2 ADC. For additional information on the Company, please visit its website at http://www.immunomedics.com. The information on its website does not, however, form a part of this press release.

**About Gilead Sciences**

Gilead Sciences, Inc. is a research-based biopharmaceutical company that discovers, develops and commercializes innovative medicines in areas of unmet medical need. The company strives to transform and simplify care for people with life-threatening illnesses around the world. Gilead has operations in more than 35 countries worldwide, with headquarters in Foster City, California. For more information on Gilead Sciences, please visit the company's website at www.gilead.com.

22.     On September 24, 2020, the Company filed a Schedule 14D-9 Solicitation/Recommendation Statement under Section 14(d)(4) of the Exchange Act (the "Solicitation Statement") with the SEC in connection with the Proposed Transaction.

**B.  The Solicitation Statement Contains Materially False and Misleading Statements and Omissions**

23.     The Solicitation Statement, which recommends that Immunomedics shareholders tender their shares to Merger Sub in connection with the Proposed Transaction, omits and/or misrepresents material information concerning: (i) the sales process leading up to the Proposed Transaction; (ii) the Company's financial projections; and (iii) the financial analyses performed by the Company's financial advisors, Centerview Partners LLC ("Centerview") and BofA Securities, Inc. ("BofA"), in connection with their fairness opinions.

24.     The omission of the material information (referenced below) renders the following sections of the Solicitation Statement false and misleading, among others: (i) Background of the Offer and the Merger; (ii) Recommendation of the Company Board; (iii) Reasons for the Company Board's Recommendation; (iv) Management Projections; and (v) Opinions of the Company's Financial Advisors.

25.     The tender offer in connection with the Proposed Transaction is set to expire at one minute after 11:59 p.m. Eastern Time on October 22, 2020 (the "Expiration Date"). It is imperative that the material information that was omitted from the Solicitation Statement be disclosed to the

Company's shareholders prior to the Expiration Date to enable them to make an informed decision as to whether to tender their shares. Plaintiff may seek to enjoin Defendants from closing the tender offer or the Proposed Transaction unless and until the material misstatements and omissions (referenced below) are remedied. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

1. **Material Omissions Concerning the Sales Process Leading up to the Proposed Transaction**

26. The Solicitation Statement omits material information concerning the sales process leading up to the Proposed Transaction.

27. The Solicitation provides that, "[i]n June 2020, with the approval of the Company Board, members of management sent process letters to 12 pharmaceutical companies, including Gilead, Party A, Party B and Party C, that had executed confidentiality agreements with the Company and had displayed a credible interest in pursuing a collaboration arrangement for Trodelvy[.]"

28. The Solicitation Statement, however, fails to disclose with sufficient specificity the terms of all confidentiality agreements, including whether such agreements contained standstill provisions with "don't ask, don't waive" (DADW) provisions (including their time of enforcement) that would preclude interested parties from making superior offers for the Company.

29. Without this information, Immunomedics shareholders may have the mistaken belief that potential buyers are or were permitted to submit superior proposals for the Company, when in fact they are or were contractually prohibited from doing so. This information is material because a reasonable Immunomedics shareholder would want to know, prior to tendering their shares in connection with the Proposed Transaction, whether other potential buyers are or were foreclosed from submitting a superior proposal.

30.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 2.  Material Omissions Concerning the Company's Financial Projections

31.     The Solicitation Statement omits material information concerning the Company's financial projections.

32.     The Solicitation Statement provides that the Company's management prepared financial projections of the Company for fiscal years 2020 through 2034 that were provided to the Board and the Company's financial advisors, stating in pertinent part:

> [I]n connection with the evaluation of a proposed transaction, at the direction of the Company Board, management of the Company prepared certain non-public, unaudited prospective financial information for fiscal years 2020 through 2034 (the "Projections"). The Projections were provided to the Company Board in considering, analyzing and evaluating the Transactions. In addition, the Projections were provided to Centerview and BofA Securities, the Company's financial advisors, and were relied upon by Centerview and BofA Securities in connection with the rendering of their respective fairness opinions[.]

33.     With respect to the Projections, the Solicitation Statement fails to disclose: (1) all line items underlying (i) Total Net Revenue, (ii) Gross Profit, (iii) EBIT, and (iv) unlevered free cash flow; and (2) a reconciliation of all non-GAAP to GAAP metrics.

34.     Further, the Solicitation Statement provides that the Projections were prepared in September 2020 by Company management based on certain assumptions and reflecting a "risk-adjusted outlook," stating in pertinent part:

> The Projections were prepared in September 2020 by the Company management based on their assumptions about the Company's continued operation as a standalone, publicly traded company. The projections reflect a risk-adjusted outlook, based on certain internal assumptions about the probability of technical success and regulatory approvals, launch timing, epidemiology, pricing, sales ramp, market growth, market share, competition, market exclusivity, research and development expenses, general and administrative expenses, effective tax rate and utilization of net operating losses and other relevant factors related to the Company's long-range operating plan.

35.     Yet the Solicitation Statement fails to adequately disclose the impact that the assumptions had on the Projections and further fails to quantify the assumptions underlying the projections, including "the probability of technical success and regulatory approvals, launch timing, epidemiology, pricing, sales ramp, market growth, market share, competition, market exclusivity, research and development expenses, general and administrative expenses, effective tax rate and utilization of net operating losses and other relevant factors related to the Company's long-range operating plan."

36.     The Solicitation Statement further fails to disclose the unadjusted projections (without adjusting for the risk-adjustments, based on certain internal assumptions) so shareholders can properly assess and determine the financial impact that the Company's assumptions had on the Projections.

37.     The disclosure of this information is material because it would provide the Company's shareholders with a basis to project the future financial performance of the Company and would allow shareholders to better understand the financial analyses performed by the Company's financial advisors in support of their fairness opinions. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Defendant(s) and the Company's financial advisors, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisors' fairness opinions in determining whether to tender their shares in connection with the Proposed Transaction.

38.     When a company discloses non-GAAP financial metrics in a Solicitation Statement that were relied upon by its board of directors in recommending that shareholders exercise their corporate suffrage rights in a particular manner, the company must also disclose, pursuant to SEC

Regulation G, all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.[1]

39.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 3.   Material Omissions Concerning the Financial Advisors' Analyses

40.     In connection with the Proposed Transaction, the Solicitation Statement omits material information concerning analyses performed by Centerview and BofA.

41.     The valuation methods, underlying assumptions, and key inputs used by Centerview and BofA in rendering their purported fairness opinions must be fairly disclosed to Immunomedics shareholders. The description of Centerview's and BofA's fairness opinions and analyses, however, fail to include key inputs and assumptions underlying those analyses. Without the information described below, Immunomedics shareholders are unable to fully understand Centerview's and BofA's fairness opinions and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to tender their shares in connection with the Proposed Transaction. This omitted information, if disclosed, would significantly alter

---

[1] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited Oct. 1, 2020) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

the total mix of information available to the Company's shareholders.

**A.** *Centerview's Analyses*

42.     The Solicitation Statement fails to disclose the following concerning Centerview's "*Selected Public Company Analysis*" and "*Selected Precedent Transactions Analysis*": (1) the individual inputs and assumptions underlying the reference range of 4.0x to 6.0x 2024E revenue multiples and range of 5.0x to 8.0x of implied four-year forward revenue multiples; and (2) the Company's fully diluted outstanding shares.

43.     The Solicitation Statement fails to disclose the following concerning Centerview's "*Discounted Cash Flow Analysis*": (1) the individual inputs and assumptions underlying the discount rates ranging from 9.0% to 11.0%; (2) all line items underlying the risk-adjusted, after-tax unlevered free cash flows of the Company over the period beginning on October 1, 2020 and ending on December 31, 2034; (3) the implied terminal value of the Company; (4) Centerview's basis for its assumption that the unlevered free cash flows would decline in perpetuity after December 31, 2034 at a rate of free cash flow decline of 30.0% year-over-year for Trodelvy and IMMU-130, increase 5% year-over-year in perpetuity for the Company's SN-38 antibody-drug conjugate platform and increase 3% year-over-year for other corporate items; (5) the Company's federal net operating losses and research and development tax credits as of December 31, 2019 and future losses; (6) the Company's fully diluted outstanding shares as of September 9, 2020; and (7) the corrected number of the Company's fully-diluted shares as of September 12, 2020.

44.     With respect to Centerview's "*Premiums Paid Analysis*," the Solicitation Statement fails to disclose the individual premiums paid in each transaction utilized by Centerview in its analysis.

45.     With respect to Centerview's "*Analyst Price Target Analysis*," the Solicitation

Statement fails to provide the individual price targets analyzed and the sources thereof.

**B.** *BofA's Analyses*

46.    The Solicitation Statement fails to disclose the following concerning BofA's

"*Discounted Cash Flow Analysis*":

(1) the gross profit expected to be generated by the Company for Trodelvy in metastatic triple negative breast cancer (or mTNBC);

(2) the gross profit expected to be generated by the Company for Trodelvy in metastatic urothelial cancer (or mUC);

(3) the gross profit expected to be generated by the Company for Trodelvy in estrogen receptor positive metastatic breast cancer (or ER+ mBC);

(4) the gross profit expected to be generated by the Company for Trodelvy in metastatic non-small cell lung cancer (or mNSCLC);

(5) the gross profit expected to be generated by the Company for other Trodelvy indications (including head and neck squamous cell carcinoma (or HNSCC), endometrial cancer (or ENDO), castration resistant prostate cancer (or CRPC) and Post-Neoadjuvant breast cancer);

(6) the corporate expenses allocated to Trodelvy (including research and development, sales and marketing and general and administrative costs);

(7) the royalties and milestone payment amounts (including royalties and milestone payments received from Everest Medicines II Limited and royalty payments to RPI Finance Trust and The Scripps Research Institute);

(8) the gross profit expected to be generated by the Company for IMMU-130;

(9) the corporate expenses allocated to IMMU-130 (including research and development, sales and marketing and general and administrative costs);

(10)    the probability of success adjusted earnings before income taxes allocated to the Company's antibody drug conjugate (or ADC) platform based on the Company's assumption of a new indication with $1 billion of peak net sales brought to market every two years with a five year ramp up period starting in 2027;

(11)    the unallocated corporate expenses and cash flow items (including research and development, sales and marketing and general and administrative costs, total depreciation and amortization, total capital expenditures and total change

in working capital);

(12)    the Company group's taxes;

(13)    the terminal values for each of items (1) through (12) above;

(14)    the individual inputs and assumptions underlying the (i) perpetuity growth rates ranging from negative 30.0% to negative 25.0% for items (1) through (9) and (12), perpetuity growth rates ranging from 3.0% to 5.0% for item (10) and perpetuity growth rates ranging from 0.0% to 2.0% for item (11), and (ii) discount rates ranging from 8.5% to 11.0%;

(15)    the present value of the net operating losses of the Company, including Federal R&D Tax Credits; and

(16)    the Company's fully diluted shares.

47.    With respect to BofA's analysis of financial analyst price targets for the Company, the Solicitation Statement fails to provide the individual price targets analyzed and the sources thereof.

48.    With respect to BofA's analysis of premiums paid in selected precedent life sciences transactions, the Solicitation Statement fails to disclose each transaction and the premiums paid therein.

## COUNT I
### For Violations of Section 14(e) of the Exchange Act
### Against All Defendants

49.    Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

50.    Section 14(e) of the Exchange Act states, in relevant part:

It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . . in connection with any tender offer or request or invitation for tenders[.]

51.    During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Solicitation Statement specified

above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(e) of the Exchange Act.

52.     Each of the Individual Defendants, by virtue of their positions within the Company as officers and/or directors, were aware of materially false and/or misleading and/or omitted information but failed to disclose such information, in violation of Section 14(e) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Solicitation Statement with respect to the Proposed Transaction.

53.     The false and misleading statements and omissions in the Solicitation Statement are material in that a reasonable shareholder would consider them important in deciding whether to tender their shares in connection with the Proposed Transaction.

54.     Defendants acted knowingly or with deliberate recklessness in filing or causing the filing of the materially false and misleading Solicitation Statement.

55.     By reason of the foregoing, Defendants violated Section 14(e) of the Exchange Act.

56.     Because of the false and misleading statements in the Solicitation Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
### For Violations of Section 14(d)(4) of the Exchange Act and Rule 14d-9 Promulgated Thereunder
### Against All Defendants

57.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

58.     Defendants caused the Solicitation Statement to be issued with the intent to solicit shareholder support for the Proposed Transaction.

59.     Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers. Specifically, Section 14(d)(4) states, in relevant part:

> Any solicitation or recommendation to the holders of such a security to accept or reject a tender offer or request or invitation for tenders shall be made in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

60.     SEC Rule 14d-9(d), adopted to implement Section 14(d)(4) of the Exchange Act, states, in relevant part:

> Any solicitation or recommendation to holders of a class of securities referred to in section 14(d)(1) of the Act with respect to a tender offer for such securities shall include the name of the person making such solicitation or recommendation and the information required by Items 1 through 8 of Schedule 14D-9 (§ 240.14d-101) or a fair and adequate summary thereof[.]

61.     In accordance with SEC Rule 14d-9, Item 8 of Schedule 14D-9 requires that a company:

> Furnish such additional material information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading.

62.     During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Solicitation Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9.

63.     Each of the Individual Defendants, by virtue of their positions within the Company as officers and/or directors, were aware of materially false and/or misleading and/or omitted information but failed to disclose such information, in violation of Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9. Defendants, by use of the mails and means and

instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file
and disseminate the Solicitation Statement with respect to the Proposed Transaction.

64.     Defendants acted knowingly or with deliberate recklessness in filing the materially
false and misleading Solicitation Statement which omitted material information.

65.     The false and misleading statements and omissions in the Solicitation Statement are
material in that a reasonable shareholder would consider them important in deciding whether to
tender their shares in connection with the Proposed Transaction.

**COUNT III**
**Violations of Section 20(a) of the Exchange Act**
**Against the Individual Defendants**

66.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing
paragraphs as if fully set forth herein.

67.     The Individual Defendants acted as control persons of the Company within the
meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions
as officers and/or directors of the Company and participation in and/or awareness of the
Company's operations and/or intimate knowledge of the false statements contained in the
Solicitation Statement filed with the SEC, they had the power to and did influence and control,
directly or indirectly, the decision-making of the Company, including the content and
dissemination of the false and misleading Solicitation Statement.

68.     Each of the Individual Defendants was provided with or had unlimited access to
copies of the Solicitation Statement and other statements alleged by Plaintiff to be misleading prior
to and/or shortly after these statements were issued and had the ability to prevent the issuance of
the statements or cause the statements to be corrected. As officers and/or directors of a publicly
owned company, the Individual Defendants had a duty to disseminate accurate and truthful

information with respect to the Solicitation Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

69.     In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Solicitation Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Solicitation Statement at issue contains the recommendation of the Individual Defendants to tender their shares pursuant to the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Solicitation Statement.

70.     In addition, as the Solicitation Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Solicitation Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

71.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

72.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Sections 14(e), 14(d)(4), and Rule 14d-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of

the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.      Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and the tender offer in connection with the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to the Company's shareholders;

B.      In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding Plaintiff rescissory damages;

C.      Declaring that Defendants violated Sections 14(e), 14(d)(4), and 20(a) of the Exchange Act, and Rule 14d-9 promulgated thereunder;

D.      Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expenses and expert fees; and

E.      Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: October 1, 2020                              Respectfully submitted,

                                                    **HALPER SADEH LLP**

                                                    /s/Zachary Halper
                                                    Zachary Halper, Esq.
                                                    186 Darwin Lane
                                                    North Brunswick, NJ 08902
                                                    Telephone: (212) 763-0060
                                                    Facsimile: (646) 776-2600
                                                    Email: zhalper@halpersadeh.com

Daniel Sadeh, Esq. (*pro hac vice* application
forthcoming)
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*